UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIELLE WILHITE,<br>   As parent/guardian of C.Y.<br><br>            Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>            Defendant. | Civil Action No. 14-1841 (AK) |

### MEMORANDUM OPINION

The parties consented for this case to be directly reassigned to the undersigned for all purposes pursuant to Local Civil Rule 73.1(a). (Meet and Confer [8] at 2; Referral to Magistrate Judge [9]). Pending before the Court are Plaintiff's Motion for Summary Judgment ("Motion") [12] and Memorandum of Points and Authorities in Support of Plaintiff['s] Motion for Summary Judgment ("Memorandum") [12-1]; Defendant's Cross Motion for Summary Judgment and Memorandum of Points and Authorities in Support Thereof [13] and Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Memorandum of Points and Authorities in Support Thereof [14] (collectively, "Def.'s Cross Motion"); Plaintiff's Reply in Support of its Motion for Summary Judgment [15] and Plaintiff's Response Opposing Defendant's Cross Motion for Summary Judgment [16] (collectively, "Pl.'s Reply"); and Defendant's Reply in Support of its Cross Motion for Summary Judgment ("Def.'s Reply") [17]. Plaintiff Danielle Wilhite ("Plaintiff") requests from Defendant District of Columbia ("Defendant") a total of $41,130 in attorney's fees incurred by Plaintiff in pursuing an administrative proceeding brought pursuant to the Individuals with Disabilities in Education Act and Individuals with Disabilities in Education

Improvement Act (collectively, the "IDEA"), 20 U.S.C. § 1400, *et seq.* (2012). (Memorandum at 2, 7). Defendant contests the number of hours for which Plaintiff is entitled attorney's fees and the hourly rate Plaintiff's counsel applied. (Def.'s Cross Motion at 6-10). Upon consideration of Plaintiff's Motion for Summary Judgment, Defendant's Cross Motion, Plaintiff's Reply and Defendant's Reply, and for the reasons set forth, the undersigned grants in part and denies in part Plaintiff's Motion for Summary Judgment [12] and grants in part and denies in part Defendant's Cross Motion for Summary Judgment [13].

## I.   BACKGROUND

Plaintiff is the parent/guardian of a minor student ("the student") with disabilities who requires special education services pursuant to the IDEA. (Memorandum at 2). The IDEA guarantees all children with disabilities a Free Appropriate Public Education ("FAPE"), 20 U.S.C. § 1400(d)(1)(A) (2012), and in general, FAPE "is available to all children with disabilities residing in the State between the ages of 3 and 21, . . . ." 20 U.S.C. § 1412(a)(1)(A) (2012). Defendant District of Columbia is a municipal corporation that operates the District of Columbia Public Schools system ("DCPS"). (Complaint for Declaratory Judgment and Relief [1] ("Compl.") ¶ 4). Pursuant to the IDEA, Defendant receives federal funds to ensure access to a Free and Appropriate Public Education ("FAPE")" and it is obliged to comply with applicable federal regulations and statutes including the IDEA. *See* 20 U.S.C. § 1411 (2012). Pursuant to 20 U.S.C. § 1415(i)(3)(B) (2012), a court may award reasonable attorney's fees to a parent of a child with a disability who prevails in an IDEA proceeding.

The student attended a DCPS full-time special education program at "School A" for the 2012-2013 school year ("SY") (Hearing Officer's Determination ("HOD") [12-5] at 2). At the end of SY 2012-2013, School A closed. (*Id.*). DCPS failed to inform Plaintiff where the student would

attend school for the SY 2013-2014 until after that school year had begun. (*Id.*). Therefore, the student was not in school during the first few weeks of SY 2013-2014. (*Id.*). Once DCPS informed Plaintiff of the student's new placement, Plaintiff enrolled the student in a DCPS special education program at "School B," where the student was suspended multiple times throughout the first semester and in January 2014. (*Id.*). Plaintiff claims that the suspensions totaled more than ten school days and DCPS failed to convene a manifestation determination review ("MDR") meeting. (*Id.*). On February 11, 2014, the student was suspended for forty-five days. (*Id.*). Plaintiff claims DCPS failed to convene a MDR and provide the student with an alternative placement. (*Id.*). The student did not attend school following the suspension until approximately April 7, 2014, when Plaintiff placed him in a private full-time special education school, "School C." (*Id.*).

On April 4, 2014, Plaintiff filed an Administrative Due Process Complaint Notice with the District of Columbia State Enforcement and Investigation Division. (Due Process Compl. [12-4] at 1). Plaintiff alleged that DCPS denied the student a FAPE by failing to (1) adequately evaluate, including failing to perform triennial evaluations, and/or to evaluate in all areas of suspected disabilities; (2) use appropriate criteria when determining the existence of a learning disability; (3) develop an appropriate IEP on March 12, 2014; (4) implement IEPs during SY 2013-2014; (5) comply with disciplinary regulations when suspending the student during SY 2013-2014; (6) provide appropriate school placement during SY 2013-2014; and (7) provide prior written notice to the parent when proposing a change to the student's identification, evaluation, and educational placement. (*Id.* at 5). Plaintiff sought an order for DCPS to (1) fund the student's placement at School C, retroactively from April 7, 2014; (2) participate in the development of an Individualized Education Program ("IEP") at School C about 30 days after the student's enrollment; (3) fund an independent comprehensive psychological evaluation and an independent functional behavioral

assessment ("FBA"); and (4) fund the compensatory education plan Plaintiff provided during SY 2013-14. (*Id.* at 6).

At the May 9, 2014 hearing, the Hearing Officer considered whether DCPS failed to provide the student a FAPE by any of the following:

1. failing to comply with disciplinary regulations when suspending the student on multiple occasions during SY 2013-2014 ("Issue 1");

2. failing to adequately evaluate, including perform a FBA upon the student's suspension in January 2014 ("Issue 2");

3. failing to develop an appropriate IEP on March 12, 2014, because Plaintiff was not included in the IEP meeting ("Issue 3");

4. failing to implement the student's IEP during SY 2013-2014 after the student was suspended in January 2014 ("Issue 4");

5. failing to provide an appropriate school placement after the student was suspended in January 2014 ("Issue 5"); and

6. failing to provide prior written notice regarding the student's change of placement at the time of the forty-five day suspension on February 11, 2014 ("Issue 6").

(HOD at 2, 4).

The HOD was issued on May 21, 2014. (*Id.* at 13). The Hearing Officer found that Plaintiff sustained her burden of proof on Issues 1, 2, 4 and 5, but failed to do so on Issues 3 and 6. (*Id.* at 8-12). Plaintiff sustained her burden on Issue 1 because she proved DCPS denied the student a FAPE by not convening a MDR after the student's eleventh day of suspension during SY 2012-2013 and thus failing to comply with 34 C.F.R. §§ 300.530-536 (*Id.* at 8-9). Plaintiff sustained her burden on Issue 2 because she proved DCPS denied the student a FAPE by failing to comply with

34 C.F.R. §§ 300.530-536 because it did not conduct a FBA after the student's eleventh day of suspension during SY 2013-2014, January 2014 suspension for ten school days or February 11, 2014 forty-five day suspension. (*Id.* at 9-10). Plaintiff did not sustain her burden on Issue 3 because there was insufficient evidence that an IEP document from a meeting Plaintiff participated in "was the student's current IEP or that an IEP meeting was held with or without the parent to develop that document." (*Id.* at 10). Plaintiff sustained her burden on Issue 4 because she proved DCPS denied the student a FAPE by failing to provide the student educational services or behavioral intervention services pursuant to 34 C.F.R. § 300.530(d) and implement his IEP during the time the student was suspended after his October 2013 suspension and every suspension thereafter. (*Id.* at 10-11). Plaintiff sustained her burden on Issue 5 because she proved DCPS denied the student a FAPE by failing to provide the student an alternative placement during his forty-five day suspension pursuant to 34 C.F.R. § 300.530(d). (*Id.* at 11-12). Plaintiff did not sustain her burden on Issue 6 because there was evidence that Plaintiff was provided a notice of proposed suspension when the student was suspended on February 11, 2014 and there was no evidence that Plaintiff needed to be provided with additional documentation. (*Id.* at 12).

In fashioning appropriate relief, the Hearing Officer noted that Plaintiff failed to propose appropriate services to compensate the student for the services from which he should have benefited during his total fifty-three days of suspension in accordance with his IEP during SY 2013-2014 at School A. (*Id.* at 12). Notwithstanding this failure on the part of Plaintiff, the Hearing Officer concluded that in the interests of equity, the student should be awarded at least nominal services as compensation. (*Id.*). Accordingly, the Hearing Officer ordered DCPS to provide the student with thirty hours of independent tutoring and fifteen hours of independent counseling or mentoring within thirty calendar days of the release of the HOD. (*Id.* at 13). The Hearing Officer

also directed DCPS to place and fund the student at School C retroactively from April 7, 2014 through the remainder of SY 2013-2014. (*Id.*). Finally, the Hearing Officer ordered DCPS to conduct a FBA of the student and convene an IEP meeting at School C to review and revise the student's IEP and develop a behavior intervention plan within thirty schools days after the release of the HOD. (*Id.*).

On November 3, 2014, Plaintiff filed a Complaint for Declaratory Judgment and Relief in this Court seeking a judgment declaring that she was the prevailing party in the IDEA administrative proceeding and she was entitled to recover attorney's fees and costs[1] relating to that proceeding at the rate set by the *Laffey* Matrix. (Compl. 1, 4). Carolyn W. Houck ("Ms. Houck") represented Plaintiff prior to and during the administrative process, at the administrative hearing, and after the HOD was issued. (Memorandum [12-1] at 2-3; Memorandum, Ex. 3 ("Attorney Fee Worksheet") [12-6]). Ms. Houck documented 91.4 hours of attorney time, billed at $450.00 per hour, totaling $41,130. (Memorandum at 7; Attorney Fee Worksheet). The undersigned must determine whether and to what extent Plaintiff is entitled to reimbursement of fees.

## II.     LEGAL STANDARD

### A. Summary Judgment on an IDEA Claim

A party moving for summary judgment on legal fees must demonstrate (1) prevailing party status and (2) the reasonableness of the fees requested in terms of hours spent and hourly rate.[2] *See* 20 U.S.C. § 1415(i)(3); *see also Alegria v. D.C.*, 391 F.3d 262, 265-66, 269 (D.C. Cir. 2004) (affirming denial of attorney's fees because moving party failed to prove prevailing party status).

---

[1] Plaintiff's Complaint sought attorney's fees and costs totaling $41,902. (Compl. 3-4). However, Plaintiff's Motion only sought attorney's fees for $41,130. (Memorandum at 7; Attorney Fee Worksheet). Because Plaintiff only moved for fees, the undersigned only analyzed an award of attorney's fees.

[2] The typical summary judgment standard is inapplicable here because "[t]he IDEA authorizes a court to award fees in its discretion and to base the award on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Parks v. D.C.*, 895 F. Supp. 2d 124, 129 (D.D.C. 2012) (citation and internal quotations omitted).

Pursuant to Fed. R. Civ. P. 56(a), summary judgment shall be granted if the movant shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56). Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The court is required to draw all justifiable inferences in the nonmoving party's favor and to accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. The non-moving party cannot rely on allegations or conclusory statements. *See Greene v Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Accepting such conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."). Instead, the non-moving party is obliged to present specific facts that would enable a reasonable jury to find in its favor. *Id.*

1. **Prevailing Party Status**

The IDEA gives courts authority to award reasonable attorney's fees to the parents of a child with a disability who is the prevailing party. *See* 20 U.S.C. § 1415(i)(3)(B).[3] The court must initially determine whether the party seeking attorney's fees is the prevailing party. *See Jackson v. D.C.*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010). Whether the plaintiff is a "prevailing party" under

---

[3] "An action or proceeding under the IDEA includes both civil litigation in federal court and administrative litigation before hearing officers." *Smith v. Roher*, 954 F. Supp. 359, 362 (D.D.C. 1997) (quoting *Moore v. D.C*, 907 F.2d 165, 176 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 998 (1990) (negative treatment on other grounds)).

§ 1415(i)(3)(B) is a "question of law" for the court to decide "based on the administrative record and the hearing officer's decision." *Artis ex rel. S.A. v. D.C.*, 543 F. Supp. 2d 15, 22 (D.D.C. 2005); *see also D.C. v. W.*, 699 F. Supp. 2d 273, 278 (D.D.C. 2010) (in considering a claim for IDEA attorney's fees, it is the court "not the hearing officer in the administrative proceeding, which determines prevailing party status.") (quoting *D.C. v. Straus*, 607 F. Supp. 2d 180, 183 (D.D.C. 2009)).

### 2. Establishing a Reasonable Fee

The plaintiff has the burden of establishing the reasonableness of any fee requests. *See In re N.*, 59 F.3d 184, 189 (D.C. Cir. 1995) (per curiam); *see also Covington v. D.C.*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) ("[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.") (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). "An award of attorney's fees is calculated by multiplying a *reasonable hourly rate* by the *number of hours reasonably expended* on the case." *Smith*, 954 F. Supp. at 364 (citing *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983)) (emphasis added); *see also Blum*, 465 U.S. at 888.

The IDEA states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). To demonstrate a reasonable hourly rate, the fee applicant must show: (1) an attorney's usual billing practices; (2) counsel's skill, experience and reputation; (3) the prevailing market rates in the community. *See Covington*, 57 F.3d at 1103, 1107 (citations omitted). The determination of a "'market rate' for the services of a lawyer is inherently difficult" and is decided by the court in its discretion. *Blum*, 465 U.S. at 896 n.11. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce

satisfactory evidence . . . that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* Additionally, an attorney's usual billing rate may be considered the "reasonable rate" if it accords with the rates prevailing in the community for similar services by lawyers possessing similar skill, experience and reputation. *Kattan by Thomas v. D.C.*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum*, 465 U.S. at 895-96 n.11).

### III. ANALYSIS

#### A. Partially Prevailing Party Status

Defendant contends that Plaintiff is only a partially prevailing party because she did not satisfy her burden of proof on two of the six issues presented for resolution at the due process hearing. (Def.'s Cross Motion at 6; Def.'s Reply at 1 n.1; HOD at 8-12). Plaintiff counters that she fully prevailed because she was granted all of the relief she requested. (Pl.'s Reply at 3; Due Process Compl. at 1; HOD at 13). Defendant concedes that the Hearing Officer awarded Plaintiff a substantial amount of relief and does not directly address Plaintiff's contention of receiving all requested relief. (Def.'s Reply at 1 n.1).

The Supreme Court has rejected the "catalyst theory" whereby a plaintiff would be a prevailing party if the lawsuit brought about the desired result through a voluntary change in the defendant's conduct. [4] *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't Health & Human Res.*, 532 U.S. 598, 605 (2001); *see also D.C. v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) ("the term 'prevailing party' [is] a legal term of art" that requires more than achieving the desired outcome; the party seeking fees must also have "been awarded some relief by the court") (quoting

---

[4] The standards in *Buckhannon* apply to administrative hearings under the IDEA even though the relief granted is administrative as opposed to judicial. *See Abarca v. D.C.*, Civil Action No. 06-1254, 2007 WL 1794101 *2 n.1 (D.D.C. June 19, 2007).

*Buckhannon*, 532 U.S. at 603). The D.C. Circuit has interpreted *Buckhannon* as requiring a three-part test to determine prevailing party status: (1) an alteration of the legal relationship between the parties; (2) a favorable judgment for the party requesting fees; and (3) a judicial pronouncement accompanied by judicial relief. *See Straus*, 590 F.3d at 901 (citing *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492-93 (D.C. Cir. 2003)); *see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."); *Lopez*, 383 F. Supp. 2d at 22 (finding the relationship between the parties was materially altered because the District was ordered to fund plaintiff's education, "forc[ing] the District to undertake a new obligation that it protested it did not have.").

Here, Plaintiff satisfied this three-part test. Plaintiff achieved an alteration of the legal relationship between the parties because the Hearing Officer ordered Defendant to undertake a new obligation and fund the student's placement at School C (HOD at 13). Next, Plaintiff secured a favorable judgment from the District of Columbia Office of the State Superintendent of Education because the HOD held that Plaintiff met her burden of proof on four of the six issues before the Hearing Officer. (*Id.* at 8-13). Finally, there is a judicial pronouncement accompanied by judicial relief because the HOD granted Plaintiff relief. [5] (*Id.* at 13). However, Plaintiff only prevailed on four of the six issues raised and the Hearing Officer only granted compensatory education as a matter of equity, even though Plaintiff failed to present appropriate evidence in support of this form of relief. (*Id.* at 12-13). Thus, Plaintiff is a partially prevailing party.

---

[5] The HOD is slightly ambiguous as to the funding of the FBA and compensatory education. (C*ompare* HOD at 13 *with* Due Process Compl. at 6). However, it calls on DCPS to "conduct" the FBA and "provide" the compensatory education. (HOD at 13). In the view of the undersigned, Plaintiff received all of the relief contested.

Accordingly, the undersigned must now consider the reasonableness of the number of hours billed and the hourly rate utilized by Plaintiff's counsel.

### 1. <u>Reduction Due to Partially Prevailing Party Status</u>

Defendant argues that Plaintiff's fee reward should be reduced because she only partially prevailed. (Def.'s Cross Motion at 6-7). Plaintiff contends that she obtained virtually all available relief, and thus a reduction in hours is not warranted. (Pl.'s Reply at 3-5).

If a party prevails partially, the court has discretion to determine whether a reduction of fees based on hours expended is appropriate. *See Hensley*, 461 U.S. at 434, 436-37. A two-pronged approach guides this determination. *See A.B. v. D.C.,* 19 F. Supp. 3d 201, 208 (D.D.C. 2014) (citing *Hensley*, 461 U.S. at 434). Because Plaintiff is a partially prevailing party, the *Hensley* two-pronged analysis applies. 461 U.S. at 434, 436.

First, the court determines whether the unsuccessful claims were related to the successful claims. *See Hensley*, 461 U.S. at 434. Claims are unrelated if they "do not involve a common core of facts and are not based on related legal theories." *A.B.*, 19 F. Supp. 3d at 208 (citing *Goos v. Nat'l Ass'n of Realtors*, 997 F.2d 1565, 1569 (D.C. Cir. 1993); *Trout v. Sec'y of Navy*, 540 F.3d 442, 448 (D.C. Cir. 2008)). If there are unsuccessful claims unrelated to the successful claims, fees for working on these unsuccessful claims are excluded from the award. *See Hensley*, 461 U.S. at 435.

Defendant does not address whether the unsuccessful claims were related to the successful claims. (Def.'s Cross Motion; Def.'s Reply). Plaintiff argues that the fees should not be reduced because all of Plaintiff's claims "were related to programming changes for the student," and Ms. Houck's time expended in preparation of "the hearing was all related to obtaining the requested

change of placement[.]" (Pl.'s Reply at 4-5). Therefore, Plaintiff contends that any unsuccessful claims were integral parts of the overarching goal of the case.

The undersigned finds that the unsuccessful claims were related to the successful claims because they shared the same set of common core facts and are based on related legal theories. Both unsuccessful issues were related to the requested program changes and the relief the Hearing Officer awarded. (HOD at 4, 13). For example, unsuccessful Issue 3 and successful Issue 4 both involved the student's IEP in SY 2013-2014. (*Id.* at 4). Successful Issue 5 and unsuccessful Issue 6 involved the student's school placement. (*Id.*). Issue 3 was related to the HOD ordering DCPS to hold an IEP meeting to review and revise the student's IEP. (*Id.* at 13). Issue 5 was related to the HOD ordering DCPS to change and fund the student's placement. (*Id.*). Because the unsuccessful claims are related to the successful claims, fees or working on these unsuccessful claims can be included in the award. Thus, the first prong of *Hensley* weighs in favor of not reducing fees.

Second, the court determines whether the degree of success achieved justifies relying upon the hours reasonably worked to award fees. *See Hensley*, 461 U.S. at 434, 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."); *see also Lopez*, 383 F. Supp. 2d at 22 (If a plaintiff prevails on "any significant issue in [the] litigation which achieve[d] some of the benefit the parties sought in bringing suit the plaintiff has crossed the threshold to a fee award of some kind.") (quoting *Tex. State Teachers Ass'n.*, 489 U.S. at 790).

Defendant argues that Plaintiff's partial success warrants a reduction in fees and because "[t]he tasks on Plaintiff's invoice are not clearly delineated so that one cannot discern how much time was spent on the issues on which Plaintiff prevailed and on the issues on which Plaintiff did

not prevail." (Def.'s Cross Motion at 7). In light of this, Defendant contends that the hours should be reduced by one-third because Plaintiff failed to meet the burden on one-third of her claims. (*Id.*). In response, Plaintiff argues that the hours expended should not be reduced because of her "overall degree of success" and the hearing officer granted all possible relief. (Pl.'s Reply at 3-5).

The undersigned finds that Plaintiff achieved a large degree of success, prevailed on a majority of her claims, and succeeded in obtaining the relief she requested. (HOD at 8-13). The HOD ordered three forms of relief: (1) DCPS shall provide the student with compensatory education; (2) DCPS shall place and fund the student's new placement; and (3) DCPS shall conduct a FBA, convene an IEP meeting at School C, review and revise the student's IEP, and develop a behavior intervention plan. (*Id.* at 13). However, compensatory education was granted for equitable rather than meritorious reasons. (*Id.* at 12-13). The Hearing Officer concluded that Plaintiff "fail[ed] to propose appropriate compensatory services" because the evidence presented failed to support the amount of services requested. (*Id.* at 12). The Hearing Officer noted that Plaintiff's witness used a "cookie cutter approach frowned upon[.]" (*Id.*). Accordingly, the Hearing Officer only awarded a nominal amount of compensatory education to Plaintiff in the interests of equity. (HOD at 12-13). This factor warrants a reduction in fees.

Having found a reduction is appropriate, the court has discretion to determine the method and amount of reduction. *See Hensley*, 461 U.S. at 436-37 (explaining there is no rule or formula; eliminating specific hours or reducing an award are acceptable). The Attorney Fee Worksheet that Plaintiff's counsel submitted makes it impossible to separate out the charges for legal work related to the issue warranting a reduction in fees. The undersigned rejects Defendant's "mathematical" reduction because *Hensley* explicitly rejected a default "mathematical approach" to determine by how much to reduce a fee award and instead required a more holistic assessment. 461 U.S. at 435

n.11, 436. In light of Plaintiff's degree of success, the undersigned will reduce Plaintiff's reimbursement of legal fees by ten percent to reflect the fact that Plaintiff only recovered nominal compensatory education.

### B. Reductions to Establish a Reasonable Fee

Plaintiff requests fees for 91.4 hours[6] of attorney time expended on this case. (Attorney Fee Worksheet). In support of this request, Plaintiff submitted an Attorney Fee Worksheet detailing Ms. Houck's time.

#### 1. Reasonableness of Hours Expended

Defendant does not argue that any of the hours Plaintiff expended are unreasonable. (Def.'s Cross Motion; Def.'s Reply). Unreasonably expended hours should be excluded from the court's fee calculation. *See Hensley*, 461 U.S. at 434. Hours expended may be "unreasonable" if they are excessive for the type of task performed, if they reflect redundant or overstaffed efforts, or if they are "otherwise unnecessary." *Id*. The burden of demonstrating the reasonableness of hours claimed is met with the submission of "invoices that are sufficiently detailed" for the court to determine whether the hours are justified. *Lopez v. D.C.*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (citing *Kaseman v. D.C.*, 329 F. Supp. 2d 20, 26 (2004)); *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). The court may reduce the award if the documentation is inadequate. *See Hensley*, 461 U.S. at 433. After closely reviewing the Attorney

---

[6] Totaling the sum of hours expended on the Attorney Fee Worksheet would have assisted the Court in analyzing Plaintiff's documentation.

Fee Worksheet, the undersigned finds that the invoice is sufficiently detailed[7] and that the hours expended were reasonable.[8]

### 2. **Reasonableness of Hourly Rates**

Plaintiff contends that her attorney, Ms. Houck, should be compensated at a rate of $450 per hour for work performed. (Memorandum at 4-5; Memorandum, Ex. 4 (2003-2014 *Laffey* Matrix) [12-7]; Decl. of Carolyn Houck, Esq. ("Houck Decl.") [12-8]; Pl.'s Reply at 6). Plaintiff's counsel utilizes the hourly rates set forth in the 2003-2014 *Laffey* Matrix[9] for an attorney with seventeen years of experience, noting that these rates have been applied in many IDEA fee cases and thus, they are reasonable. (Memorandum at 4-5, Memorandum, Ex. 4; Houck Decl.). Plaintiff did not utilize the higher hourly rates set forth in the 2014-2015 *Laffey* Matrix[10] that would have been applicable to the work she performed after May 31, 2014. (Pl.'s Reply's at 6-7, Pl.'s Reply, Ex. 1 (2014-2015 *Laffey* Matrix) [15-1]). Plaintiff offered evidence sufficient to establish her attorney's experience, skill, and reputation in IDEA matters. (Memorandum at 4-5; Houck Decl.; Decl. of Kimberly Glassman [12-9]).

The *Laffey* Matrix was created to follow rates charged by litigators who practice complex federal litigation in the District of Columbia, which are presumptive maximum rates for such litigation. *See Laffey v Nw. Airlines, Inc.*, 572 F. Supp. 354, 374 (D.D.C. 1983) *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984) ("the relevant legal market in this action is

---

[7] Although the invoice was sufficiently detailed, it was difficult to analyze because it contained several errors. Specifically, the invoice consisted of typographical errors, and Plaintiff's counsel failed to completely redact the student's name. (Attorney Fee Worksheet at 2, 3, 5-8). A more careful analysis during the hour expended reviewing the Attorney Fee Worksheet prior to submission would have saved judicial resources.

[8] The Attorney Fee Worksheet indicates that some of the time expended was clerical in nature, but because it was nominal, the undersigned let it stand. (Attorney Fee Worksheet at 2, 4-6).

[9] The 2003-2014 *Laffey* Matrix is available at http://www.justice.gov/sites/default/files/usao-dc/legacy/ 2013/09/09/ Laffey_Matrix%202014.pdf

[10] The 2014–2015 *Laffey* Matrix is available at http://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/ Laffey%20Matrix_2014-2015.pdf

complex employment discrimination litigation"). The United States Attorney's Office for the District of Columbia updates the Matrix annually to reflect increases in the local Consumer Price Index. *See Rooths v. D.C.*, 802 F. Supp. 2d 56, 61 (D.D.C. 2011) (citing *Laffey*, 572 F. Supp. at 360 n.3). Applying *Laffey* Matrix rates would provide Ms. Houck, an attorney for seventeen years, with $450 per hour for the 82.5 hours of work performed from March 5, 2014 through May 31, 2014, and $460 per hour for the 8.9 hours of work performed from June 1, 2014 through August 4, 2014. (Attorney Fee Worksheet; 2003 – 2014 *Laffey* Matrix; 2014–2015 *Laffey* Matrix).

Defendant opposes the use of the *Laffey* Matrix for calculating hourly rates "because the case did not involve complex legal issues." (Def.'s Cross Motion at 7). Defendant argues that the *Laffey* Matrix rate is "not presumptively appropriate" and notes that many judges in this Court apply a rate of three-quarters of *Laffey* or less to IDEA attorney's fees cases. (*Id.* at 8-9). Whereas the "complex federal lawsuit" producing the *Laffey* Matrix rate involved a class action lasting thirteen years, "an extended period of pretrial discovery, full trial on the merits, two rounds of appeals, and one certiorari petition," (*Id.* at 8, quoting *Laffey*, 572 F. Supp, at 359), this case was simple because it involved a hearing lasting less than one day, three witnesses, eighteen exhibits and "run-of-the-mill issues involved in many IDEA cases," and thus does not warrant the *Laffey* Matrix rate (*Id.* at 8-9).

In response, Plaintiff claimed this case was not a routine administrative hearing because Plaintiff's counsel needed knowledge of the student's psychological and academic issues and the ability to present the information. (Pl.'s Reply at 5-6). Additionally, Plaintiff also noted this was not a simple case because it involved a detailed complaint, pre-hearing conference, pre-hearing order, disclosure of materials, and preparation for the hearing. (*Id.* at 6). Plaintiff did not address the length of the hearing, the number of witnesses or the number of exhibits Defendant asserted.

(Pl.'s Reply). Defendant argued that Plaintiff's rationale was "basic knowledge any attorney must have or run afoul of the rules of professional conduct." (Def.'s Reply at 1-2). Both parties exceeded the scope of the motions at issue and addressed a broader issue of DCPS awarding attorney's fees and costs for IDEA cases in general.[11] (*Id.* at 2; Pl.'s Reply at 7).

Pursuant to the IDEA, federal courts may award "reasonable" attorney's fees, 20 U.S.C. § 1415(i)(3)(B)(i), which are based on the rates "prevailing in the community for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). In this district, judges "routinely refer to the *Laffey* Matrix to determine the reasonableness of requested attorney's fees in IDEA actions." *B.R. ex rel. Rempson v. D.C.*, 802 F. Supp. 2d 153, 164 (D.D.C. 2011). *See generally Brighthaupt v. D.C.*, Civil Action No. 13-1294 (JMF), 2014 WL 1365506 at *2 (D.D.C. Apr. 2, 2014) (recognizing *Laffey* Matrix rates may be used as "an appropriate starting point for determining rates of reimbursement for attorneys who challenge the decisions of the DCPS."). While *Laffey* Matrix rates may be used as a starting point, federal courts do not automatically have to award *Laffey* Matrix rates. *See Brighthaupt*, 2014 WL 1365506, at *2.

Courts use their discretion to determine whether hourly rates are "reasonable" and may consider factors including the complexity of the issues addressed during the IDEA administrative process, the work that was performed by counsel, and the manner in which the disputed issues were resolved. *See, e.g.*, *McAllister v. D.C.*, Civil Action No. 11-2173 (RC), 2014 WL 2921020 (D.D.C. June 27, 2014) (discussing reasons for awarding less than full *Laffey* Matrix rates and distinguishing circumstances where rates equaling or exceeding *Laffey* have been applied); *see*

---

[11] For the future, the undersigned reminds counsel for both parties to keep inflammatory language out of their respective briefs. Counsel bickered about "DCPS' effort to essentially starve out the Plaintiffs' bar" (Pl.'s Reply at 7) and whether Plaintiff's counsel is in fact starving in light of the attorney's fees she has been awarded for other IDEA cases. (Def.'s Reply at 2-3).

*also Parks*, 895 F. Supp. 2d 124 (examining the record in the case with regard to the complexity of the proceedings, to determine whether fees equal to or near the *Laffey* Matrix rate apply).

In contrast, where the issues are not complex, insofar as there is no pre-hearing discovery, no lengthy argument, and few, if any, motions, some judges in this Court have awarded reduced *Laffey* Matrix rates. *See Brighthaupt*, 2014 WL 1365506, at *3 (finding that none of the three cases involved issues that were complex but instead that they proceeded in a "fairly routine fashion"); *see also McAllister*, 2014 WL 901512, at *9 (finding *Laffey* Matrix rates unwarranted because the hearings at issue lacked complexity; there were few or no witnesses, limited contested issues and in one case, a default judgment was entered due to defense counsel's failure to appear); *Wright v. D.C.,* No. 11-CIV-384, 2012 WL 79015 at *4 (D.D.C. Jan. 11, 2012) (finding *Laffey* Matrix rates unreasonable because there was a "routine administrative hearing" involving a one day long routine administrative proceeding and there was no evidence "the hearing presented a novel legal issue or was significantly more complex than most IDEA hearings."); *Rooths*, 802 F. Supp. 2d at 63 (wherein the trial court noted that "[l]ike most IDEA cases, the claim on which the plaintiff prevailed in this action involved very simple facts, little evidence, and no novel or complicated questions of law.").

The undersigned does not dispute that counsel's knowledge of IDEA law, experience and understanding of the procedural aspects of administrative hearings helped Plaintiff to obtain the relief she sought. However, a case involving a hearing lasting less than one day, eighteen exhibits, and three witnesses is not complex, and Plaintiff did not raise any novel legal issues. There is no indication that the hearing presented any significant challenges to its counsel and the HOD does not support Plaintiff's sweeping statements that this administrative proceeding was complicated. Neither the HOD nor Plaintiff identify any pre-hearing discovery, lengthy argument, or motion.

Upon review of the record in this case, the undersigned finds that counsel's hourly billing rates should be calculated as three-quarters of the *Laffey* Matrix rates, with a resulting hourly rate of $337.50 for hours expended from March 5, 2014 through May 31, 2014 and an hourly rate of $345.00 for hours expended from June 1, 2014 through August 4, 2014.

## IV.   CONCLUSION

For the reasons stated above, the undersigned grants in part and denies in part Plaintiff's Motion for Summary Judgment [12] and grants in part and denies in part Defendant's Cross Motion for Summary Judgment [13]. As previously noted, Ms. Houck documented 91.4 hours of attorney time, billed at $450.00 per hour. (Memorandum at 7; Attorney Fee Worksheet). Taking into account the ten percent reduction of hours, reflecting Plaintiff's partially prevailing party status, and the reduced hourly rate corresponding to three-quarters of the *Laffey* Matrix rates, the undersigned thus awards Plaintiff a total of $27,822.83 in attorney's fees. An Order consistent with this Memorandum Opinion will be issued separately.

Date: June 22, 2015                                    __/s/_____
                                                                    ALAN KAY
                                                                    UNITED STATES MAGISTRATE JUDGE